By the Court :
There is no difficulty about the facts material to the decision of this cause. It is clear that Loring originally indorsed Harlow’s note with his own name, and upon his own account, and that he afterward substituted that of the partnership, without the knowledge, authority, or consent of Smith.
We entertain no doubt but, upon this state of facts, Loring was accountable to Smith for any loss sustained by the partnership, The making use of the partnership name to remove his own, was an application of the partnership credit to his separate use. And if pecuniaiy loss followed, its consequence was an application of the partnership funds to the individual benefit of one of the partners. The power of the partner to do this, by no means includes the right to do it, without being accountable. Wherever a partner binds the partnership for his own private advantage, he is liable to the partnership. Ho principle is better settled, and it is impossible to conceive how a court of justice could adjudge otherwise.
We can conceive of no course of reasoning, by which an individual indorsement can be distinguished from an individual note. Both create an individual liability for some legal consideration received by the party that incurs it, and the discharge of that liability must be for the benefit of the party Liable. The firm of ■Smith & Loring derived no benefit from their indorsement of Harlow’s note, more than they would from paying any other debt due by Loiing. The benefit resulted wholly to Loring, the prejudice to the firm.
It is attempted, in argument, to distinguish the two cases, by alleging that it was equally the interest of both partners to sustain Harlow’s credit, and that therefore the indorsement was for the benefit of both. But this argument *would more strongly ■apply to an individual debt of Loring’s. The firm would be deeply *435 interested in preserving the credit of one of its members; and this might form a reasonable apology for a temporary application of partnership credit or funds to that purpose. But it could be no legal ground for exempting the partner, whose debt was paid, from accounting to the firm for the amount.
It is urged that if the indorsement was made without authority from Smith, it did not bind him, that the payment was, therefore, voluntary on his part, and he can not now recover it back.
As between Smith and the bank, upon the state of facts in this ease, there is no doubt this argument would be conclusive. It would be equally so, had the supposed liability been created by Doring, for money, which he actually received and applied to the purchase of a private estate. In that case, we presume, it would scarcely be resorted to. A partner borrows money, and gives for it the note of the firm. With this money he buys a farm, and takes the title to himself. The lender of the money was fully apprised of the fact that it was obtained for private investment, consequently this co-partner was not legally liable. Nevertheless, to .avoid controversy, he pays the debt, and takes up the note. Can it be for a moment supposed, that in a settlement between the partners, a court of justice would permit the maker of the note to exempt himself from accountability, by proving that, in point of law, the payment was voluntary, though made upon a liability of his own creating, and in payment of money that he had received and invested? As we view this case, the argument of voluntary payment is the same as it would be in the case supposed.
Upon the whole proof it is clear, that when the settlement was made with the -bank, Smith agreed to relinquish his claim against Loring, upon account of this indorsement. And this presents the real and only difficult point in the cause. If this agreement was made upon a good consideration, with a knowledge of his rights, and in circumstances that gave Loring no.unfair advantage, it must conclude Smith.
*At the time of the adjustment, when the separate property of the parties was made common stock, and sold to the bank for their mutual and equal advantage, it would seem that Loring’s part was of the greatest value. Though Smith gave some equivalent for this, in giving up his claim upon Loring for the original difference of exchange, still the difference in value, in favor of Loring, constituted some consideration. Under ordinary *436 circumstances, the adequacy of the consideration is not tó be taken-into account. In the settlement of partnership affairs, where they settle upon equal terms, and mutually agree to share losses from, motives of friendship, and a disposition not. to scrutinize each-other’s conduct too closely, such settlements should not be disturbed, although the liabilities of one might greatly exceed those of the other. And for this reason, the inducement to settle of itself constitutes a good consideration.
But in this ease, and when this settlement was made, the parties were not upon equal terms. The property of Smith was under execution for a company debt, which it was equally the duty of Loring to pay. The property of Smith was bound, that of Loring was free. With this advantage in his favor, Loring refuses to make a settlement of the debts of the firm, which all the testimony concurs in describing as advantageous to both Smith and Loring,. unless Smith will relinquish this claim upon Loring’s own terms.. The conduct of'Loring, throughout all the negotiations, is that of a man who feels that he has an advantage, and is determined to. use it. Loring was, in any event, liable for Harlow’s debt, and there could be no justifiable reason for refusing to settle it, and the other debts of the firm, to the mutual benefit of both, without' an abandonment on the part of Smith of his claim for compensation. There was no necessary connection between the payment of debts due from the firm, and a settlement of account between the partners. The only conceivable reason for connecting the two-subjects would seem to be this: unless I can secure a certain residuum for myself, by a settlement, I will keep all, and let the-creditors do their +worst. It is, indeed, in proof that a threat,, something in this character, was thrown out.
In the course of these negotiations, Loring steadily refuses to. concede anything. He would not give up the award in his favor in the New Orleans affair. Smith was required to give up tha debt due from Loring for the difference of exchange, and the liability of Loring for the .Harlow indorsement. For these concessions by Smith, Loring would exonerate Smith from an alleged liability in the Sprigman case, which, upon investigation, turns, out to be totally groundless, and without color of justice. In the course of Loring, there was no equality or reciprocity of concession. The execution levied bn Smith’s property seems to have given Loring this advantage over him. It is evident, that in the- *437 'negotiations, Smith did not contend upon equal terms. His great anxiety to effect the settlement is even alleged and insisted upon in the answer, as a ground why he should be concluded by it. .Smith pressed the settlement; Loring insisted to clog it with conditions.
Every case of this kind must be decided more or less, upon its own circumstances. Three judges only sit in this cause. • Two of us are of opinion that connecting the situation of Smith, the conduct of Loring, and the inadequacy of consideration together, they •present a proper ground for allowing the relief sought. Upon the first and second points, we all concur in opinion. It is only as to the effect of the settlement that we differ.
Judge Sherman dissented.
.Judge Burnet did not sit.